**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **ROSA RAMOS, YOLANDE SAKEPA,** and **DAMON RICHARDS**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>**HUNTINGTON HOSPITALITY FINANCIAL CORPORATION**,<br><br>Defendant. | Case No.: 3:25-cv-02083-N<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Rosa Ramos, Yolande Sakepa and Damon Richards ("Plaintiffs"), individually and on behalf of all others similarly situated, and on behalf of the general public, bring this Class Action Complaint, against Defendant Huntington Hospitality Financial Corporation ("Defendant") based on personal knowledge and the investigation of counsel, and allege as follows:

## I. INTRODUCTION

1. Plaintiffs and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendant with sensitive Personally Identifiable Information ("PII[1]" or "Private Information") that was impacted in a data breach Defendant disclosed in July 2025 (the "Data Breach" or the "Breach").

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

2. Defendant is composed of "hospitality experts, focused exclusively on hotel accounting and financial services for select and full-service hotels with rooms, banquet facilities, restaurant, bar, gift shop and other ancillary profit centers."[2]

3. As part of its business, and in order to gain profits, Defendant obtained and stored the Private Information of Plaintiffs and Class members.

4. By taking possession and control of Plaintiffs and Class Members' Private Information, Defendant assumed a duty to securely store and protect it.

5. Defendant breached this duty and betrayed the trust of Plaintiffs and Class Members by failing to properly safeguard and protect their Private Information, thus enabling cybercriminals to access, acquire, appropriate, compromise, disclose, encumber, exfiltrate, release, steal, misuse, and/or view it.

6. On or about December 12, 2024, Defendant learned that personal information of certain individuals was accessed by an unauthorized user.[3] Once the incident was discovered, Defendant launched an investigation, to determine the nature and scope of the Data Breach.[4]

7. Defendant's investigation revealed that an unauthorized third-party accessed data stored in Defendant's computer network.[5]

8. Upon information and belief, the following types of Private Information were impacted as a result of the Data Breach: name and Social Security number.[6]

---

[2] *See* http://huntingtonhotelgroup.com/hhfc-services
[3] *Exhibit A*: Exemplar Notice Letter.
[4] *Id.*
[5] *Id.*
[6] *Id.*

9. On or around July 31, 2025, Defendant began issuing notice letters to individuals impacted.[7]

10. Defendant's misconduct – failing to implement adequate and reasonable measures to protect Plaintiffs and Class Members' Private Information, failing to timely detect the Data Breach, failing to take adequate steps to prevent and stop the Data Breach, failing to disclose the material facts that it did not have adequate security practices in place to safeguard the Private Information, and failing to provide timely and adequate notice of the Data Breach – caused substantial harm and injuries to Plaintiffs and Class Members across the United States.

11. Due to Defendant's negligence and failures, cyber criminals obtained and now possess everything they need to commit personal identity theft and wreak havoc on the financial and personal lives of thousands of individuals, for decades to come.

12. Plaintiffs bring this class action lawsuit to hold Defendant responsible for its grossly negligent—indeed, reckless—failure to use statutorily required or reasonable industry cybersecurity measures to protect Class Members' Private Information.

13. As a result of the Data Breach, Plaintiffs and Class members have already suffered damages. For example, now that their Private Information has been released into the criminal cyber domains, Plaintiffs and Class members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiffs and Class members are now forced to deal with the danger of identity thieves possessing and using their Private Information.

14. Additionally, Plaintiffs and Class members have already lost time and money responding to and mitigating the impact of the Data Breach, which efforts are continuous and ongoing.

---

[7] *Id.*

15. Plaintiffs bring this action individually and on behalf of the Class and seeks actual damages and restitution. Plaintiffs also seek declaratory and injunctive relief, including significant improvements to Defendant's data security systems and protocols, future annual audits, Defendant-funded long-term credit monitoring services, and other remedies as the Court sees necessary and proper.

## II. THE PARTIES

16. Plaintiff Rosa Ramos is a citizen and resident of California.

17. Plaintiff Yolande Sakepa is a citizen and resident of Ohio.

18. Plaintiff Damon Richards is a citizen and resident of California.

19. Defendant is a Texas corporation with its headquarters and principal place of business located at 105 Decker Court, Suite 500, Irving, Texas 75062.

## II. JURISDICTION AND VENUE

20. The Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is more than 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendant's citizenship. Thus, minimal diversity exists under 28 U.S.C. § 1332 (d) (2) (A). Defendant has its principal place of business located in this District.

21. The Court has personal jurisdiction over Defendant because Defendant is registered to do business and maintains its principal place of business in the state of Texas.

22. Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## III. FACTUAL ALLEGATIONS

### A. Background on Defendant

23. Defendant is composed of "hospitality experts, focused exclusively on hotel accounting and financial services for select and full-service hotels with rooms, banquet facilities, restaurant, bar, gift shop and other ancillary profit centers."[8]

24. As a condition of doing business, Defendant requires individuals entrust it with highly sensitive Private Information. In the ordinary course of receiving services from Defendant, Plaintiffs and Class Members were required to provide their Private Information to Defendant.

25. Defendant made promises and representations to individuals,' including Plaintiffs and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained through its privacy policy.

26. Defendant's privacy policy posted on its website states, in relevant part:

> The Company recognizes the importance of privacy to our customers and visitors to our website and will work to protect the security and privacy of any personal information that you provide to us.
>
> We will use commercially reasonable efforts to hold and transmit your personal information in a safe, confidential and secure environment.[9]

27. Plaintiffs and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

28. As a result of collecting and storing the Private Information of Plaintiffs and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ

---

[8] http://huntingtonhotelgroup.com/hhfc-services
[9] http://huntingtonhotelgroup.com/privacy-policy

reasonable measures to protect Plaintiffs and the Class Members' Private Information from disclosure to third parties.

**B. The Data Breach**

29. On December 12, 2024, Defendant identified a cybersecurity incident that impacted certain internal systems.[10] Once the incident was discovered, Defendant launched an investigation, to determine the nature and scope of the Data Breach.[11]

30. Defendant's investigation revealed that an unauthorized third-party accessed Defendant's data stored within Defendant's computer network system.

31. Defendant's Notice Letter sent to Plaintiffs state, in relevant part:

> **What Happened.** On July 18, 2025, we learned that personal information of certain individuals was potentially accessed without authorization. The unauthorized access was the result of a suspicious event we first learned of on or about December 12, 2024. Specifically, we became aware of unusual activity in our computer network and immediately took steps to secure our systems. We engaged cybersecurity experts to assist with this process. The investigation determined that certain data stored within the network environment may have been acquired without authorization on or about December 12, 2024. Once we learned this, we undertook a comprehensive programmatic and manual review of the potentially affected files. This review took time and was concluded on July 18, 2025, and we identified that some of your information may have been involved.
>
> **What Information Was Involved.** The potentially affected information may have included your name as well as your Social Security number.

32. Defendant had obligations created by the FTC Act, contract, common law, and industry standards to keep Plaintiffs and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

---

[10] Ex. A.
[11] *Id.*

33. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiffs and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

34. The Data Breach resulted in an unauthorized third-party accessing and acquiring files containing unencrypted Private Information of Plaintiffs and Class Members. Plaintiffs and Class Members' Private Information was accessed and stolen in the Data Breach.

35. Concerningly, the notorious "Termite" ransomware group claimed responsibility for the cyberattack.[12]

36. First identified in 2024, Termite stands out for its "focused attacks" and has already been linked to several high profile cyberattacks since its inception.[13] Its tactics involve "encrypting files and leaving behind ransom notes that guide victims to website for further communication."[14]

37. Termite claimed credit for the Data Breach in a post on its Dark Web website. Allegedly, they exfiltrated at least 38.7 Gigabytes of data from Defendant.[15]

---

[12] @H4ckmanac, TWITTER (X) (January 8, 2025, 8:03 AM), https://x.com/H4ckManac/status/1876993186067042328

[13] Dark Web Profile: Termite Ransomware, SOCRadar, https://socradar.io/dark-web-profile-termite-ransomware/ (last visited October 1, 2025).

[14] *Id.*

[15] @H4ckmanac, TWITTER (X) (January 8, 2025, 8:03 AM), https://x.com/H4ckManac/status/1876993186067042328




38. Termite's post also provided images of documents it exfiltrated from Defendant's systems, with a link to "Show more photos."[16]

39. Thus, upon information and belief, cybercriminals have already exposed this information on the Dark Web.

40. Upon information and belief, Plaintiffs and Class Members' Private Information was subsequently published on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

41. Defendant failed to take precautions designed to keep individuals' Private Information secure.

42. Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

---

[16] *Id.*

### C. Defendant's Failure to Prevent, Identify, and Timely Report the Data Breach

43. Defendant failed to take adequate measures to protect its computer systems against unauthorized access.

44. The Private Information that Defendant allowed to be exposed in the Data Breach is the type of private information that Defendant knew or should have known would be the target of cyberattacks.

45. Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[17] Defendant failed to disclose that its systems and security practices were inadequate to reasonably safeguard its past and present clients or customers Private Information.

46. The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[18] Immediate notification of a Data Breach is critical so that those impacted can take measures to protect themselves.

47. Here, Defendant waited nearly 8 *months* after being made aware of the Data Breach, to inform impacted individuals.

### D. Plaintiffs' Experiences

***Plaintiff Rosa Ramos***

48. Plaintiff Ramos is a customer of Defendant.

---

[17] *Protecting Personal Information: A Guide for Business,* FED. TRADE COMM'N (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business. (last visited Sept. 29, 2025).
[18] *Id.*

49. Plaintiff Ramos received a notice letter from Defendant on July 31, 2025, informing her that her Private Information was specifically identified as having been exposed to cybercriminals in the Data Breach.

50. Plaintiff Ramos is very careful with her Private Information.

51. Because of the Data Breach, Plaintiff Ramos's Private Information is now in the hands of cyber criminals. Plaintiff Ramos and all Class Members are now imminently at risk of crippling future identity theft and fraud.

52. As a result of the Data Breach, Plaintiff Ramos has already expended time and suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including investigating the Data Breach, researching how best to ensure that she is protected from identity theft, reviewing account statements and other information, and taking other steps in an attempt to mitigate the harm caused by the Data Breach.

53. As a result of the Data Breach, Plaintiff Ramos has received an uptick in suspicious spam calls, text messages, and emails.

54. Plaintiff Ramos has also suffered injury directly and proximately caused by the Data Breach, including: (a) theft of Plaintiff Ramos's valuable Private Information; (b) the imminent and certain impending injury flowing from fraud and identity theft posed by Plaintiff Ramos's Private Information being placed in the hands of cybercriminals; (c) damages to and/or diminution in value of Plaintiff Ramos's Private Information that was entrusted to Defendant with the understanding that Defendant would safeguard this information against disclosure; (d) loss of the benefit of the bargain with Defendant to provide adequate and reasonable data security—*i.e.*, the difference in value between what Plaintiff Ramos should have received from Defendant and

Defendant's defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect Plaintiff Ramos's Private Information; and (e) continued risk to Plaintiff Ramos's Private Information, which remains in the possession of Defendant and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information that was entrusted to Defendant.

***Plaintiff Yolande Sakepa***

55. Plaintiff Sakepa is a customer of Defendant.

56. Plaintiff Sakepa received a notice letter from Defendant on July 31, 2025, informing her that her Private Information was specifically identified as having been exposed to cybercriminals in the Data Breach.

57. Plaintiff Sakepa is very careful with her Private Information.

58. Because of the Data Breach, Plaintiff Sakepa's Private Information is now in the hands of cyber criminals. Plaintiff Sakepa and all Class Members are now imminently at risk of crippling future identity theft and fraud.

59. As a result of the Data Breach, Plaintiff Sakepa has already expended time and suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including investigating the Data Breach, researching how best to ensure that she is protected from identity theft, reviewing account statements and other information, and taking other steps in an attempt to mitigate the harm caused by the Data Breach.

60. As a result of the Data Breach, Plaintiff Sakepa has received an uptick in suspicious spam calls, text messages, and emails. On August 1, 2025, Plaintiff Sakepa's bank alerted her that

her card had been subject to several fraudulent purchase attempts which Plaintiff Sakepa did not recognize and certainly did not authorize. Plaintiff Sakepa suffered from three fraudulent charges of $300, $300, and $200 on her Navy Federal bank account, which she was forced to dispute with the bank. These attempts at fraud are evidence that her PII is now available for exploitation by cybercriminals.

61. Plaintiff Sakepa has also suffered injury directly and proximately caused by the Data Breach, including: (a) theft of Plaintiff Sakepa's valuable Private Information; (b) the imminent and certain impending injury flowing from fraud and identity theft posed by Plaintiff Sakepa's Private Information being placed in the hands of cybercriminals; (c) damages to and/or diminution in value of Plaintiff Ramos's Private Information that was entrusted to Defendant with the understanding that Defendant would safeguard this information against disclosure; (d) loss of the benefit of the bargain with Defendant to provide adequate and reasonable data security—*i.e.*, the difference in value between what Plaintiff Sakepa should have received from Defendant and Defendant's defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect Plaintiff Sakepa's Private Information; and (e) continued risk to Plaintiff Sakepa's Private Information, which remains in the possession of Defendant and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information that was entrusted to Defendant.

***Plaintiff Damon Richards***

62. Plaintiff Richards is a customer of Defendant.

63. Plaintiff Richards received a notice letter from Defendant on July 31, 2025, informing his that his Private Information was specifically identified as having been exposed to cybercriminals in the Data Breach.

64. Plaintiff Richards is very careful with his Private Information.

65. Because of the Data Breach, Plaintiff Richards's Private Information is now in the hands of cyber criminals. Plaintiff Richards and all Class Members are now imminently at risk of crippling future identity theft and fraud.

66. As a result of the Data Breach, Plaintiff Richards has already expended time and suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including investigating the Data Breach, researching how best to ensure that he is protected from identity theft, reviewing account statements and other information, and taking other steps in an attempt to mitigate the harm caused by the Data Breach.

67. As a result of the Data Breach, Plaintiff Richards has received an uptick in suspicious spam calls, text messages, and emails. In addition, Plaintiff Richards has received an alert that certain of his information is on multiple data broker sites on the dark web.

68. Plaintiff Richards has also suffered injury directly and proximately caused by the Data Breach, including: (a) theft of Plaintiff Richards's valuable Private Information; (b) the imminent and certain impending injury flowing from fraud and identity theft posed by Plaintiff Richards's Private Information being placed in the hands of cybercriminals; (c) damages to and/or diminution in value of Plaintiff Richards's Private Information that was entrusted to Defendant with the understanding that Defendant would safeguard this information against disclosure; (d) loss of the benefit of the bargain with Defendant to provide adequate and reasonable data

security—*i.e.*, the difference in value between what Plaintiff Richards should have received from Defendant and Defendant's defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect Plaintiff Richards's Private Information; and (e) continued risk to Plaintiff Richards's Private Information, which remains in the possession of Defendant and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information that was entrusted to Defendant.

### E. Defendant Had an Obligation to Protect Private Information under the Law and the Applicable Standard of Care

69. Defendant also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

70. Defendant is further required by various states' laws and regulations to protect Plaintiffs and Class Members' Private Information.

71. Defendant owed a duty to Plaintiffs and the Class to design, maintain, and test its computer and application systems to ensure that the Private Information in its possession was adequately secured and protected.

72. Defendant owed a duty to Plaintiffs and the Class to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees (and others who accessed Private Information within its computer systems) on how to adequately protect Private Information.

73. Defendant owed a duty to Plaintiffs and the Class to implement processes that would detect a breach on its system in a timely manner.

74. Defendant owed a duty to Plaintiffs and the Class to act upon data security warnings and alerts in a timely fashion.

75. Defendant owed a duty to Plaintiffs and the Class to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to entrust Private Information with Defendant.

76. Defendant owed a duty to Plaintiffs and the Class to disclose in a timely and accurate manner when data breaches occurred.

77. Defendant owed a duty of care to Plaintiffs and the Class because it was a foreseeable victim of a data breach.

### F. Defendant Was on Notice of Cyber Attack Threats and of the Inadequacy of Its Data Security.

78. Data security breaches have dominated the headlines for the last two decades. And it doesn't take an IT industry expert to know it. The general public can tell you the names of some

of the biggest cybersecurity breaches: Target,[19] Yahoo,[20] Marriott International,[21] Chipotle, Chili's, Arby's,[22] and others.[23]

79. Defendant should certainly have been aware, and indeed was aware, that it was at risk for a data breach that could expose the Private Information that it collected and maintained.

80. Defendant was also on notice of the importance of data encryption of Private Information. Defendant knew it kept Private Information in its systems and yet it appears Defendant did not encrypt these systems or the information contained within them.

### G. Cyber Criminals Will Use Plaintiffs and Class Members' Private Information to Defraud Them.

81. Plaintiffs and Class Members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiffs and the Class Members and to profit off their misfortune.

---

[19] Michael Kassner, *Anatomy of the Target Data Breach: Missed Opportunities and Lessons Learned*, ZDNET (Feb. 2, 2015), https://www.zdnet.com/article/anatomy-of-the-target-data-breach-missed-opportunities-and-lessons-learned/ (last visited Sept. 29, 2025).

[20] Martyn Williams, *Inside the Russian Hack of Yahoo: How They Did It*, CSOONLINE.COM (Oct. 4, 2017), https://www.csoonline.com/article/3180762/inside-the-russian-hack-of-yahoo-how-they-did-it.html (last visited Sept. 29, 2025).

[21] Patrick Nohe, *The Marriot Data Breach: Full Autopsy*, THE SSL STORE: HASHEDOUT (Mar. 22, 2019), https://www.thesslstore.com/blog/autopsying-the-marriott-data-breach-this-is-why-insurance-matters/ (last visited Sept. 29, 2025).

[22] Alfred Ng, *FBI Nabs Alleged Hackers in Theft of 15M Credit Cards from Chipotle, Others*, CNET (Aug. 1, 2018), https://www.cnet.com/news/fbi-nabs-alleged-hackers-in-theft-of-15m-credit-cards-from-chipotle-others/?ftag=CMG-01-10aaa1b (last visited Sept. 29, 2025).

[23] *See, e.g.*, Taylor Armerding, *The 18 Biggest Data Breaches of the 21st Century*, CSO ONLINE (Dec. 20, 2018), https://www.csoonline.com/article/2130877/the-biggest-data-breaches-of-the-21st-century.html (last visited Sept. 29, 2025).

82. Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[24] For example, with the Private Information stolen in the Data Breach, identity thieves can open financial accounts, apply for credit, collect government benefits, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[25] These criminal activities have and will result in devastating financial and personal losses to Plaintiffs and Class Members.

83. Private Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.[26]

84. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number and name.

85. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information,

---

[24] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity") (last visited Sept. 29, 2025).

[25] https://www.experian.com/blogs/ask-experian/what-should-i-do-if-my-drivers-license-number-is-stolen/ (last visited Sept. 29, 2025).

[26] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/products/gao-07-737 (last visited Sept. 29, 2025).

personally identifiable information and Social Security numbers are worth more than 10x on the black market."[27]

86. This was a financially motivated Data Breach, as apparent from the discovery of the cyber criminals seeking to profit from the sale of Plaintiffs and the Class Members' Private Information on the dark web. The Private Information exposed in this Data Breach are valuable to identity thieves for use in the kinds of criminal activity described herein.

87. These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to personally identifiable information, they will use it.[28]

88. Hackers may not use the accessed information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[29]

89. As described above, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[30]

90. With this Data Breach, identity thieves have already started to prey on the victims, and one can reasonably anticipate this will continue.

---

[27] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at* https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x- price-of-stolen-credit-card-numbers.html.

[28] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[29] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/products/gao-07-737 (last visited Sept. 29, 2025).

[30] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

91. Victims of the Data Breach, like Plaintiffs and other Class Members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach.[31]

92. In fact, as a direct and proximate result of the Data Breach, Plaintiffs and the Class have suffered, and have been placed at an imminent, immediate, and continuing increased risk of suffering, harm from fraud and identity theft. Plaintiffs and the Class must now take the time and effort and spend the money to mitigate the actual and potential impact of the Data Breach on their everyday lives, including purchasing identity theft and credit monitoring services, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

93. Plaintiffs and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

a. Trespass, damage to, and theft of their personal property including Private Information;

b. Improper disclosure of their Private Information;

c. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals and having been already misused;

[31] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf

d. The imminent and certainly impending risk of having their Private Information used against them by spam callers to defraud them;

e. Damages flowing from Defendant's untimely and inadequate notification of the data breach;

f. Loss of privacy suffered as a result of the Data Breach;

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h. Ascertainable losses in the form of deprivation of the value of individuals' personal information for which there is a well-established and quantifiable national and international market;

i. The loss of use of and access to their credit, accounts, and/or funds;

j. Damage to their credit due to fraudulent use of their Private Information; and

k. Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

94. Moreover, Plaintiffs and Class Members have an interest in ensuring that their information, which remains in the possession of Defendant, is protected from further breaches by the implementation of industry standard and statutorily compliant security measures and safeguards. Defendant has shown itself to be incapable of protecting Plaintiffs and Class Members' Private Information.

95. Plaintiffs and Class Members are desperately trying to mitigate the damage that Defendant has caused them but, given the Private Information Defendant made accessible to

hackers, they are certain to incur additional damages. Because identity thieves have their Private Information, Plaintiffs and all Class Members will need to have identity theft monitoring protection for the rest of their lives.

96. None of this should have happened. The Data Breach was preventable.

**H. Defendant Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiffs and Class Members' Private Information.**

97. Data breaches are preventable.[32] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[33] she added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[34]

98. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[35]

99. The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

---

[32]Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).
[33]*Id.* at 17.
[34]*Id.* at 28.
[35]*Id.*

100. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.7 The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[36]

101. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

102. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

[36] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Sept. 29, 2025).

103. Defendant failed to properly implement basic data security practices, including those set forth by the FTC.

104. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to individuals' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

105. Defendant failed to meet the minimum standards of any of the following frameworks: NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

106. Defendant was entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of Plaintiffs and Class Members' Private Information.

107. Many failures laid the groundwork for the success ("success" from a cybercriminal's viewpoint) of the Data Breach, starting with Defendant's failure to incur the costs necessary to implement adequate and reasonable cyber security procedures and protocols necessary to protect Plaintiffs and Class Members' Private Information.

108. Defendant was at all times, fully aware of its obligation to protect the Private Information of Plaintiffs and Class Members. Defendant was also aware of the significant repercussions that would result from its failure to do so.

109. Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was maintained and/or exchanged, unencrypted, in Defendant's systems and were maintained in a condition vulnerable to cyberattacks.

110. Defendant knew, or reasonably should have known, the importance of safeguarding Private Information and of the foreseeable consequences that would occur if Plaintiffs and Class Members' Private Information was stolen, including the significant costs that would be placed on Plaintiffs and Class embers as a result of a breach.

111. The mechanism of the cyberattack and potential for improper disclosure of Plaintiffs and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure Plaintiffs and Class Members' Private Information from those risks left that information in a dangerous condition.

112. Defendant disregarded the rights of Plaintiffs and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its business email accounts were protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiffs and Class Members' Private Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiffs and Class Members prompt and accurate notice of the Data Breach.

## IV. CLASS ACTION ALLEGATIONS

113. Plaintiffs bring all claims as class claims under Federal Rule of Civil Procedure 23. Plaintiffs assert all claims on behalf of the Class, defined as follows:

> All individuals in the United States whose Private Information was actually or potentially accessed or acquired during Defendant's Data Breach, including those to which Defendant sent Notice of the Data Breach ("Nationwide Class" or "Class").

114. Plaintiffs reserve the right to amend the above definition or to propose subclasses in subsequent pleadings and motions for class certification.

115. The proposed Class meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

116. **Numerosity:** The proposed Class is believed to be so numerous that joinder of all members is impracticable. Upon information and belief, the Class is comprised of at least 14,192 victims.[37]

117. **Typicality:** Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the Class were injured through Defendant's uniform misconduct. The same event and conduct that gave rise to Plaintiffs' claims are identical to those that give rise to the claims of every other Class member because Plaintiffs and each member of the Class had their sensitive Private Information compromised in the same way by the same conduct of Defendant.

118. **Adequacy:** Plaintiffs are adequate representatives of the Class because Plaintiffs' interests do not conflict with the interests of the Class that Plaintiffs seek to represent; Plaintiffs have retained counsel competent and highly experienced in data breach class action litigation; and Plaintiffs and Plaintiffs' counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and Plaintiffs' counsel.

119. **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively redress Defendant's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a

---

[37] http://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/590aeb4d-6b66-497b-a439-f5b603c21b65.html

potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

120. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a. Whether Defendant engaged in the wrongful conduct alleged herein;

b. Whether Defendant failed to adequately safeguard Plaintiffs and the Class's Private Information;

c. Whether Defendant's email and computer systems and data security practices used to protect Plaintiffs and Class Members' Private Information violated the FTC Act, and/or state laws and/or Defendant's other duties discussed herein;

d. Whether Defendant owed a duty to Plaintiffs and the Class to adequately protect their Private Information, and whether it breached this duty;

e. Whether Defendant knew or should have known that its computer and network security systems and business email accounts were vulnerable to a data breach;

f. Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach;

g. Whether Defendant breached contractual duties owed to Plaintiffs and the Class to use reasonable care in protecting their Private Information;

h. Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiffs and the Class;

i. Whether Defendant continues to breach duties to Plaintiffs and the Class;

j. Whether Plaintiffs and the Class suffered injury as a proximate result of Defendant's negligent actions or failures to act;

k. Whether Plaintiffs and the Class are entitled to recover damages, equitable relief, and other relief;

l. Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiffs and members of the Class and the general public;

m. Whether Defendant's actions alleged herein constitute gross negligence; and

n. Whether Plaintiffs and Class members are entitled to punitive damages.

## V. CAUSES OF ACTION

### COUNT ONE
### NEGLIGENCE/NEGLIGENCE *PER SE*
### (On Behalf of Plaintiffs and the Nationwide Class)

121. Plaintiffs incorporate by reference all allegations of the preceding paragraphs 1 through 120 above as though fully set forth herein.

122. Defendant solicited, gathered, and stored the Private Information of Plaintiffs and the Class as part of the operation of its business and in order to gain profit.

123. Upon accepting and storing the Private Information of Plaintiffs and Class Members, Defendant undertook and owed a duty to Plaintiffs and Class members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

124. Defendant had full knowledge of the sensitivity of the Private Information, the types of harm that Plaintiffs and Class Members could and would suffer if the Private Information was wrongfully disclosed, and the importance of adequate security.

125. Plaintiffs and Class Members were the foreseeable victims of any inadequate safety and security practices on the part of Defendant. Plaintiffs and the Class Members had no ability to protect their Private Information that was in Defendant's possession. As such, a special relationship existed between Defendant and Plaintiffs and the Class.

126. Defendant was well aware of the fact that cyber criminals routinely target companies through cyberattacks in an attempt to steal sensitive personal information.

127. Defendant owed Plaintiffs and the Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiffs and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data and providing notification to Plaintiffs and the Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

128. Defendant's duty extended to protecting Plaintiffs and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

129. Defendant had duties to protect and safeguard the Private Information of Plaintiffs and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Private Information. Additional duties that Defendant owed Plaintiffs and the Class include:

a. To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, email accounts, protocols, policies, procedures and practices to ensure that Plaintiffs and Class Members' Private Information was adequately secured from impermissible release, disclosure, and publication;

b. To protect Plaintiffs and Class Members' Private Information in its possession by using reasonable and adequate security procedures and systems;

c. To implement processes to quickly detect a data breach, security incident, or intrusion involving its business email system, networks and servers; and

d. To promptly notify Plaintiffs and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

130. Only Defendant was in a position to ensure that its systems and protocols were sufficient to protect the Private Information that Plaintiffs and the Class had entrusted to it.

131. Defendant breached its duty of care by failing to adequately protect Plaintiffs and Class Members' Private Information. Defendant breached its duties by, among other things:

a. Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Private Information in its possession;

b. Failing to protect the Private Information in its possession by using reasonable and adequate security procedures and systems;

c. Failing to adequately and properly audit, test, and train its employees to avoid phishing emails;

d. Failing to use adequate email security systems, including industry standard SPAM filters, DMARC enforcement, and/or Sender Policy Framework enforcement to protect against phishing emails;

e. Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store Private Information;

f. Failing to adequately train its employees to not store Private Information longer than absolutely necessary for the specific purpose that it was sent or received;

g. Failing to consistently enforce security policies aimed at protecting Plaintiffs and the Class's Private Information;

h. Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

i. Failing to promptly notify Plaintiffs and Class Members of the Data Breach that affected their Private Information.

132. Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

133. As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiffs and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

134. Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Private Information of Plaintiffs and Class Members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiffs and Class Members while it was within Defendant's possession and control.

135. Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiffs and Class Members, Defendant prevented Plaintiffs and Class Members from taking meaningful, proactive steps toward securing their Private Information and mitigating damages.

136. As a result of the Data Breach, Plaintiffs and Class Members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, responding to fraudulent activity, closely monitoring bank account activity, and examining credit reports and statements sent from providers and their insurance companies.

137. Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

138. The damages Plaintiffs and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

139. In addition to its duties under common law, Defendant had additional duties imposed by statute and regulations, including the duties under the FTC Act. The harms which occurred as a result of Defendant's failure to observe these duties, including the loss of privacy, lost time and expense, and significant risk of identity theft are the types of harm that these statutes and regulations intended to prevent.

140. Defendant violated these statutes when it engaged in the actions and omissions alleged herein, and Plaintiffs and Class Members' injuries were a direct and proximate result of Defendant's violations of these statutes. Plaintiffs therefore is entitled to the evidentiary presumptions for negligence *per se*.

141. Pursuant to the FTC Act, 15 U.S.C. § 45(a), Defendant owed a duty to Plaintiffs and the Class to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiffs and the Class.

142. The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also formed part of the basis of Defendant's duty in this regard.

143. Defendant gathered and stored the Private Information of Plaintiffs and the Class as part of its business, which affect commerce.

144. Defendant violated the FTC Act by failing to use reasonable measures to protect the Private Information of Plaintiffs and the Class and by not complying with applicable industry standards, as described herein.

145. Defendant breached its duties to Plaintiffs and the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to

safeguard Plaintiffs and Class Members' Private Information, and by failing to provide prompt and specific notice without reasonable delay.

146. Plaintiffs and the Class are within the class of persons that the FTC Act was intended to protect.

147. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against.

148. Defendant breached its duties to Plaintiffs and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs and the Class's Private Information.

149. Defendant breached its duties to Plaintiffs and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiffs and the Class.

150. As a direct and proximate result of Defendant's negligence, Plaintiffs and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

151. The injury and harm that Plaintiffs and Class Members suffered (as alleged above) was the direct and proximate result of Defendant's negligence.

152. Plaintiffs and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

## COUNT TWO
## BREACH OF IMPLIED CONTRACT
## (On Behalf of Plaintiffs and the Nationwide Class)

153. Plaintiffs incorporate by reference all allegations of the preceding paragraphs 1 through 120 above as though fully set forth herein.

154. Plaintiffs and Class Members were required to provide Defendant with their Private Information in order to receive services.

155. When Plaintiffs and Class Members provided their Private Information to Defendant, they entered into implied contracts in which Defendant agreed to comply with its statutory and common law duties to protect their Private Information and to timely notify them in the event of a Data Breach.

156. Based on Defendant's representations, legal obligations, and acceptance of Plaintiffs and the Class Members' Private Information, Defendant had an implied duty to safeguard their Private Information through the use of reasonable industry standards. This implied duty was reinforced by Defendant's representations in its Privacy Policy.

157. Defendant breached the implied contracts by failing to safeguard Plaintiffs and Class Members' Private Information and failing to provide them with timely and accurate notice of the Data Breach. Indeed, it took Defendant nearly two months to warn Plaintiffs and Class Members of their imminent risk of identity theft, leaving Plaintiffs and Class Members unsure as to the extent of the information that was compromised.

158. As a direct and proximate result of Defendant's breach of implied contract, Plaintiffs and the Class Members have suffered damages, including foreseeable consequential damages that Defendant knew about when it requested Plaintiffs and the Class Members' Private Information

159. Plaintiffs and Class Members were required to provide Defendant with their Private Information in order to receive services.

160. When Plaintiffs and Class Members provided their Private Information to Defendant as a condition of obtaining services, they entered into implied contracts in which Defendant agreed to comply with its statutory and common law duties to protect their Private Information and to timely notify them in the event of a Data Breach.

161. Based on Defendant's representations, legal obligations, and acceptance of Plaintiffs and the Class Members' Private Information, Defendant had an implied duty to safeguard their Private Information through the use of reasonable industry standards.

162. Defendant breached the implied contracts by failing to safeguard Plaintiffs and Class Members' Private Information and failing to provide them with timely and accurate notice of the Data Breach. Indeed, it took Defendant weeks to warn Plaintiffs and Class Member of their imminent risk of identity theft. The vagueness of the breach notifications also left Plaintiffs and Class Members unsure as to the extent of the information that was compromised.

163. As a direct and proximate result of Defendant's breach of implied contract, Plaintiffs and the Class Members have suffered damages, including foreseeable consequential damages that Defendant knew about when it requested Plaintiffs and the Class Members' Private Information.

**COUNT THREE**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Nationwide Class)**

164. Plaintiffs incorporate by reference all allegations of paragraphs 1 through 120 above as though fully set forth herein.

165. Plaintiffs and the Class bring this claim in the alternative to all other claims and remedies at law.

166. Defendant collected, maintained, and stored the Private Information of Plaintiffs and Class Members as part its business operations and to gain profits. As such, Defendant had direct knowledge of the monetary benefits conferred upon it.

167. Defendant, by way of its affirmative actions and omissions, including its knowing violations of its express or implied contracts with the entities that collected Plaintiffs and the Class

Members' Private Information, knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on reasonable data privacy and security measures to secure Plaintiffs and Class Members' Private Information.

168. Instead of providing a reasonable level of security, training, and protocols that would have prevented the Data Breach, as described above and as is common industry practice among companies entrusted with similar Private Information, Defendant, upon information and belief, instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiffs and Class Members.

169. Defendant failed to implement—or adequately implement—data security practices, procedures, and programs to secure sensitive Private Information, including without limitation those industry standard data security practices, procedures, and programs discussed herein.

170. As a direct and proximate result of Defendant's decision to profit rather than provide adequate data security, Plaintiffs and Class Members suffered and continue to suffer actual damages, including (i) the amount of the savings and costs Defendant reasonably and contractually should have expended on data security measures to secure Plaintiffs and Class Members Private Information, (ii) time and expenses mitigating harms, (iii) diminished value of Private Information, (iv) loss of privacy, (v) harms as a result of identity theft; and (vi) an increased risk of future identity theft.

171. Defendant, upon information and belief, has therefore engaged in opportunistic and unethical conduct by profiting from conduct that it knew would create a significant and highly likely risk of substantial and certainly impending harm to Plaintiffs and the Class in direct violation of Plaintiffs and Class Members' interests. As such, it would be inequitable, unconscionable, and

unlawful to permit Defendant to retain the benefits it derived as a consequence of its wrongful conduct.

172. Accordingly, Plaintiffs and the Class are entitled to relief in the form of restitution and disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiffs and the Class.

**COUNT FOUR**
**INVASION OF PRIVACY**
**(On Behalf of Plaintiffs and the Nationwide Class)**

173. Plaintiffs incorporate by reference all allegations of paragraphs 1 through 120 above as though fully set forth herein.

174. Plaintiffs and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

175. Defendant owed a duty to its consumers, including Plaintiffs and the Class, to keep this information confidential.

176. The unauthorized acquisition (i.e., theft) by a third party of Plaintiffs' and Class Members' PII is highly offensive to a reasonable person.

177. The intrusion was into a place or thing which was private and entitled to be private. Plaintiffs and the Class (or their third-party agents) disclosed their sensitive and confidential information to Defendant, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiffs and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

178. The Data Breach constitutes an intentional interference with Plaintiffs' and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

179. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

180. Defendant acted with a knowing state of mind when it failed to notify Plaintiffs and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

181. Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiffs and the Class.

182. As a proximate result of Defendant's acts and omissions, the PII of Plaintiffs and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiffs and the Class to suffer damages.

183. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class because their PII are still maintained by Defendant with its inadequate cybersecurity system and policies.

184. Plaintiffs and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiffs and the Class.

185. In addition to injunctive relief, Plaintiffs, individually and on behalf of the other members of the Class, also seeks compensatory damages for Defendant's invasion of privacy,

which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**COUNT FIVE**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiffs and the Nationwide Class)**

186. Plaintiffs incorporate by reference all allegations of paragraphs 1 through 120 above as though fully set forth herein.

187. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

188. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiffs' and Class Members' Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and Class Members from further data breaches that compromise their PII. Plaintiffs allege that Defendant's data security measures remain inadequate. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of his PII will occur in the future.

189. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owes a legal duty to secure employees' and customers' Private Information and to timely notify impacted individuals of a data breach under the common law, and various state statutes; and

b. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure Private Information in its possession.

190. This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect Private Information in Defendant's data network.

191. If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and he will be forced to bring multiple lawsuits to rectify the same conduct.

192. The hardship to Plaintiffs if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiffs will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

193. Issuance of the requested injunction will not disserve the public interest. In contrast, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiffs and Class Members whose confidential information would be further compromised.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for judgment against Defendant as follows:

a. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Class requested herein;

b. A judgment in favor of Plaintiffs and the Class awarding them appropriate monetary relief, including actual damages, restitution, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class and the general public as requested herein, including, but not limited to:

i. Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

ii. Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

iii. Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;

iv. Ordering that Defendant segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

v. Ordering that Defendant cease transmitting Private Information via unencrypted email;

vi. Ordering that Defendant cease storing Private Information in email accounts;

vii. Ordering that Defendant purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

viii. Ordering that Defendant conduct regular database scanning and securing checks;

ix. Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

x. Ordering Defendant to meaningfully educate its current, former, and prospective employees and subcontractors about the threats faced as a result of the loss of financial and personal information to third parties, as well as the steps they must take to protect against such occurrences;

d. An order requiring Defendant to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

e. A judgment in favor of Plaintiffs and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

f. An award of such other and further relief as this Court may deem just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: October 16, 2025

By: /s/ Raina C. Borrelli

Raina C. Borrelli
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

Gerald D. Wells, III (pro hac vice)
LYNCH CARPENTER, LLP
1133 Penn Ave, 5th Floor
Pittsburgh, PA 15222
T: 412-322-9243
jerry@lcllp.com
steve@lcllp.com

Jeff Ostrow (pro hac vice forthcoming)
KOPELOWITZ OSTROW P.A.
One West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
ostrow@kolawyers.com

*Interim Class Counsel*

Joe Kendall
Texas Bar No. 11260700
KENDALL LAW GROUP, PLLC
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219 Telephone: 214/744-3000 /
214/744-3015 (fax)
jkendall@kendalllawgroup.com

*Interim Local Counsel*

**CERTIFICATE OF SERVICE**

I, Raina C. Borrelli, hereby certify that on October 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 16th day of October, 2025.

STRAUSS BORRELLI PLLC

By: */s/ Raina C. Borrelli*

Raina C. Borrelli
raina@straussborrelli.com
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109